et al. Mr. Shelley for the appellant, Mr. Simon for the appellee. Mr. Shelley. Good morning and may it please the court. At issue in this appeal is the complaint. Now, five has three parts associated with it. First, an allegation that officials failed to knock and announce before searching Mr. Jones' home on Moore Street in Waldorf, Maryland, a Fourth Amendment violation. The second part is an allegation that the searching officers took 30 to 40 boxes of material during the search, all of which were outside the warrant, another Fourth Amendment violation. And third, an allegation that the officers conducted the search at night when the warrant expressly limited the search to daytime hours. The district court erred in dismissing all three aspects of this, and I'd like to go in reverse order. First, the nighttime search claim. It's first necessary to emphasize the nature of this claim. It's not an allegation that all nighttime searches are illegal. The allegation is that a nighttime search violates the Constitution when the magistrate expressly says it shall occur during the daytime. Has this circuit ever said that, though? It has not quite said that. So in order to deal with the qualified immunity issue, we have to deal with persuasive authority from other circuits and then some of the language in the Youngby case. So, for instance, in Youngby, the court dealt with a silent search warrant as to the But it was plain, I think, that the court thought if the nighttime search in that case had occurred when only a daytime search had occurred, it would have been illegal. It's very difficult to read that case and believe that the court there thought that a nighttime search outside the warrant would have been legal. But if the Fourth Circuit has said that there's a circuit split on this issue, then how would a reasonable police officer know that it's definitively unconstitutional for him or her to execute a daytime warrant at night? So the Fourth Circuit was incorrect in stating that there was a circuit split. Unfortunately, this part of the Fourth Circuit's decision was sloppy. If you go back and look at the law, there's a Third Circuit case, Merritt, another Third Circuit case, Myers, a Fifth Circuit case, Vigo, an Eighth Circuit case, Kelly, a Tenth Circuit case, O'Rourke, which specifically says there's no qualified immunity in this exact context. And all those come before Yanez-Marquez, which is the Fourth Circuit case. And then what the Fourth Circuit does is it cites three cases, Schoenheit, Serp, and Burke, saying that these go the same way. They don't say that. Those other cases actually deal with silent warrants that are silent as to time. Two of them, Schoenheit and Serp. Burke doesn't even deal with the issue. It has some dictum and a footnote that's actually helpful, we think, to us. But what the Fourth Circuit did in Yanez-Marquez was it misread these other two decisions because the other two decisions didn't even involve situations that had search warrants saying So it really couldn't set up a circuit split there. And in fact, there's no court that's really ever said, there's no court anywhere that's ever said a daytime warrant can be executed at night, absent, say, exigent circumstances. So I don't think the law is at all split or unclear. If we don't agree with you, you say that we should decide that constitutional question instead of just deciding the case based on qualified immunity. Correct. Why should we do that? Well, to give direction in future cases. Obviously, Mr. Jones wouldn't be able to succeed on this part of his claim, but it would be helpful to the public at large to get this issue again on the books because the government is obviously challenging that the law is clearly decided on this issue. Mr. Kirshner, I think you cited, you quoted in your brief, the passage from Bivens that the Fourth Amendment confines an officer executing a search warrant strictly within the bounds set by the warrant. Exactly. Why do you need more than that? Fourth Amendment, Supreme Court? You really don't, Your Honor. And in fact, in Bivens, they cited a 1927 case, Marrow, M-A-R-R-O-W, which says the same thing. And that's the missing link in some of the argument here in that this isn't just about a nighttime search. It's about a nighttime search where the warrants have daytime. It doesn't say daytime, but the magistrate struck out the portion that would have extended the authorization to nighttime. Making it a daytime warrant. And therefore, it is a Bivens type of case. In other words, on its face, there was no ambiguity that this was a daytime only warrant. So the officers knew that whether they knew it was a Fourth Amendment violation, they knew they were, or should have known if they could read, that they were violating, exceeding the terms of the warrant. Right? Exactly. So it's as if they had an invalid or no warrant, isn't it? Exactly. Isn't it in this very same case, in some previous iteration of which there have been so many, that the GPS was affixed to the car in, this is the same Jones, right? Correct. And the police had a, MPD had a warrant to do this in the district for within 10 days, but they did it in Maryland on the 11th day. And the government did not even maintain that, they just conceded that they had no valid warrant. They never argued the point. This is the same. Seems to me. It's an issue, it's not really a nighttime search issue, it's an issue of what the warrant says, the magistrate deciding to put the language, cross out language in the warrant, and the officers violating it. The alternative would have been, for instance, the government coming in on the GPS and saying, well, it said the district, but it didn't say not Maryland. Correct. Yes. Yes. Total agreement. Well, I'm not surprised. So the combination of the concern for nighttime searches and the adherence that must be made to the warrant itself combines to make for a violation of the Fourth Amendment, and given cases like Bivens and the persuasive authority elsewhere that exactly, like Bivens, says that a nighttime search when a warrant indicates day violates the terms of the warrant, we think the law is clearly established everywhere that this type of situation violates the Constitution. What are the damages for that? Well, the damages would be the distress that he and his family suffered as a result of the search occurring during the middle of the night when they had to be awakened. It wasn't the middle of the night. It was, what, 4? 4.45 a.m. So there was an hour and 15 minutes. Well, it is the difference between darkness and light, essentially. What time of year was this? October. And I think we checked on sunrise that day, and it was actually later than 4.45 that day. So there is a difference between darkness and light in the expectation and the concern of the framers, really, for searches when it is dark outside, particularly comes into play here, even though the difference was an hour and 15 minutes. It's a big hour and 15 minutes. So the other aspects of Count 5, the second going in reverse order, there's the scope claim, that 30 to 40 boxes of material were taken that were outside the scope of the warrant. Judge Leon held that this claim needed to be dismissed because it was implausible under Iqbal and Twombly. But I think Judge Leon misunderstood the claim. The claim was that 30 to 40 boxes of material were taken in total, and the return on the warrant indicates that that was exactly the case. And Mr. Jones's contention is that all of it was outside the warrant because none of it was in the dish of drug dealing. Is the return in the joint appendix? It is not, but it is in the summary affirmance materials. It is in the summary affirmance materials. And that was left behind in compliance with the Federal Rules of Criminal Procedure? I'm not sure I followed. I thought returns have to be left on the premises. I believe that's correct, and it was entered on the record as well. Yeah. I think I have the same confusion I think that Judge Randolph does. I mean, under the rules, after the warrant has been executed, the officers take an inventory of what they are seizing from the home, and they are required to leave that inventory with the owner of the premises so that they know what the government has taken from their home. Is your claim that that wasn't done? No, that's not our claim. Your claim is that 30 to 40 boxes were taken, but they are outside the scope of the warrant, right? Correct, correct. And the scope of the warrant appears at this attachment A that's in the appendix, right? I believe that the scope of the warrant is in the appendix, in the joint appendix. Does Exhibit A2, or maybe that wasn't in the appendix. It's in the summary affirmance materials and also in the district court case of the Jones trial. Okay, but this document called Attachment A, does that set forth the scope of the warrant? It does, yes. And Jones's point is that everything here was seeking materials associated with drug trafficking, and nothing that was taken was in the issue of drug trafficking. In fact, when he pled guilty, none of the materials associated with this search ever appeared in the statement of facts associated with the guilty plea. This isn't necessarily he has to have the winning claim at this point. He just has to have a plausible claim. Say that again, none of the materials listed here? None of the materials that were taken in the 30 to 40 boxes are cited, for instance, in the statement of facts associated with Jones's guilty plea. And his point is that none of the materials were indicators of drug trafficking. And as a result, they were outside the scope of the warrant because everything on the attachment to the warrant that could be taken had to be related to drug trafficking. But I guess what I'm not understanding is that the attachment says, you know, things like books and records or indicia of occupancy and phone bills, et cetera, indicia of travel, et cetera, all those things are things that could be seized. Are you saying that the officers, if they look in the box, they have to, and they see some phone bills in there, they can't just seize the box? They have to make a determination as to whether those phone bills actually might prove drug trafficking before they can seize the box? If the attachments, he has to have a plausible claim of this. And so if the attachment says, you may seal books, records, receipts, and any other items evidencing the obtaining, secreting, transfer, or concealment of assets, then those records had to show the concealment of assets for them to take. But you're not alleging that the boxes did not contain any books or records or receipts. I guess that's what I'm trying to understand. Correct. It's the difference between going in and taking every book you see and every record you see and only taking those that could potentially be within the warrant because they're indicia of the secreting of assets or drug trafficking. And Jones's point is he has a plausible claim that what they took was general. It wasn't focused on the specifics of the attachment. And, therefore, he should get his day in court to try to prove that. And Judge Leon said it wasn't plausible that apparently any of the materials that were taken were outside the scope of the warrant. And under Iqbal and Twanwy, he just has to show that he has a plausible claim at this point. So I want to make sure of something. An inventory should have been and, as far as we know, was left at the premises when the search was over. Correct. And was the inventory put before Judge Leon? It was not. It was not yet before Judge Leon. He had only the complaint in front of him. And the allegation in the complaint was that 30 to 40 boxes were taken. They were outside the scope of the warrant. And, therefore, the Fourth Amendment was violated. And he said that was not plausible. Of what relevance does it have at this stage that there was certainly discovery in the completed criminal prosecution so that Jones would have been well aware of what was in those 30 to 40 boxes because that would have been provided to him in discovery? Well, I don't think it's relevant at all at the motion to dismiss stage. He just has to have a plausible allegation on his face, unless we're going to add an idea that it's not plausible if in other proceedings you learn things that might have been relevant to this that weren't used yet in the complaint. And I'm not aware of a rule like that. Am I correct in recalling that the government did not answer at that point? Did not answer yet, no. It was just a motion to dismiss. I'd like to just turn for a second to the first part, which is the not going to announce claim. And before I'd like to reserve any time I have for rebuttal, but I did want to note that there's a statute of limitations issue that's raised there that we think is not properly before the court. But if the court was to consider that, one of the issues is should D.C.'s tolling rule apply or Maryland's non-tolling rule apply? And in furtherance of the point that the D.C. tolling rule should apply, I wanted to bring to this court's attention. But it's not properly before us because it was mentioned only in the reply to the motion to dismiss? Correct. And not raised and not addressed by Judge Leon. If we remand, then the government answers the complaint and they can raise it. Correct. Correct. And that's the way it should be because it's actually a very complicated issue both legally and factually. But the point I wanted to make was that the tolling issue is controlled by D.C. law under 42 U.S.C. section 1988 and also under this court's forestall decision, 551 F. 2nd, 411. So we seek a reversal of Judge Leon's decision. When did that claim, when did the not been announced claim accrue? It accrued at the time of the, well, it accrued on the day it occurred, which is October 25th, 24th, 2005. Under D.C. law, which you have to borrow here, under the D.C. Court of Appeals, not this court, but the D.C. Court of Appeals, that they hold that the tolling rule, if events just immediately before an arrest are what you're challenging, that the tolling comes in. But the statute doesn't talk about arrest. It says that it's told if the claim accrued while the individual was in prison. When did he go to prison? Well, he was incarcerated immediately. He was handcuffed, taken, and he's never been out. Well, that's not prison. He was in custody, but that's not what the statute says. It says in prison. So he was arrested after the failure to knock and announce, right? And then he was taken to the station house, I suppose. Correct. And in a cruiser or something? And then was there a jail cell there? I don't know, but this is exactly what happened in the Tinker case, and the D.C. Court of Appeals, which is interpreting that statute, and it's the common law of that statute, held that the statute of limitations was tolled. That's not common law. Because Wallace, if we follow Wallace, as long as he's not imprisoned illegally unless he didn't have a process, right? Well, Wallace v. Cato doesn't really answer this question because both the forum state and the state of the conduct were the same. Here the conduct is in Maryland, the forum state is D.C., and it raises a different issue. Wallace actually cited another case in stating that you look to where the claim arose. That is a forum state case, and it's always been interpreted as a forum state case. I think I know the answer to this, but I'd like to hear it from you. Why is it that the statute of limitations creates an issue only with respect to the knock and announce? It doesn't in the sense that the tolling occurred for all the claims in our perspective, but the only reason we note it here is because they only raise it with respect to the knock and announce, and I think that's because heck comes into play. The other two claims were dismissed once before on the basis of heck, and as a result, that's tolled because of heck. Right, yeah. But knock and announce, number one, wasn't part of the original complaint that ultimately was dismissed. But heck. Yeah, heck doesn't apply to knock and announce because there's no suppression. That's what I thought was the answer. Well, we would agree that heck doesn't protect this one. It can't affect the judgment of conviction because it wouldn't suppress anyone. Correct, and the government's only raised the statute of limitations with respect to the knock and announce as a result. So I'm well over my time. So we, again, ask that Judge Leon's decision on all three parts of this claim be reversed. All right, thank you. We'll give you some time in rebuttal. Great, thank you. May it please the Court. I'd like to first address the time of entry claim. The Court may recall that the warrant here is a warrant issued out of the United States District Court of Maryland. The search occurred at a premises in Maryland. What's a D.C. police officer doing executing a search warrant in Maryland? Well, these are FBI agents and MPD officers who are part of a task force with the FBI. And the investigation that they were conducting of Mr. Jones encompassed the property that he maintained. So the FBI can give a D.C. police officer authority to execute a warrant outside of the officer's jurisdiction? Well, the FBI agents were also executing the warrant. So I don't believe the appellant has raised any issue as to the warrant. No, I was just curious. So the question is whether there was clearly established law in the Fourth Circuit in 2005 whether an officer's failure to comply with a time restriction in a warrant is a Fourth Amendment violation. And the Yanez Marquez case, which was issued in 2015, answers that question. Yanez Marquez reviewed its own case authority as well as authority from the Second and Sixth Circuit. Why is the Fourth Circuit the relevant circuit? Well, I would submit the Fourth Circuit is the relevant circuit because that's the law that was issued. I understand you want it to be the relevant circuit because there's a case that says that it's not settled, but that's not good enough. Well, Your Honor, the warrant was issued out of the District of Maryland, and it was executed in Maryland. But be that as it may, even if the court were to apply D.C. circuit law, there was not a consensus among the circuits establishing a clearly established right that a failure to comply with a time restriction was a Fourth Amendment violation. Indeed, in this circuit, in the U.S. v. Anderson case, which was cited by Judge Huvel, who oversaw the criminal proceeding and actually heard a motion to suppress based on the time of entry, actually heard this very same issue. She, following the U.S. v. Anderson case, concluded that the failure to comply with the time restriction was a nonconstitutional violation that did not require suppression. Why do we need anything more than Bivens? I mean, Bivens says that the Fourth Amendment requires that you comply with the terms of the warrant. The terms of the warrant were clear. The allegation in the complaint, I mean, which we have to take as true at this point, is that they didn't comply with the term of the warrant. Well, because Bivens was not addressing a time restriction in a warrant. Bivens was a case where the plaintiff alleged that they were arrested without a warrant and without probable cause. What plaintiffs are referring to is a footnote in Bivens that's citing to a 1927 decision that is talking about the requirement in a warrant to identify the place to be searched and the items to be seized. So that statement in dicta in Bivens is stating that you cannot exceed the scope of the warrant with respect to the items to be seized and the place to be searched, which are all part of the Fourth Amendment. But Bivens was decided on a complaint, period. Well, it was decided. There was no evidence. But the suggestion here is that Bivens somehow resolved, clearly resolved, the question here, which is whether compliance with a time restriction in a warrant, fair to comply with a time restriction in a warrant, violates the Fourth Amendment. And Bivens did not hold that. This is a dicta assertion in a footnote in Bivens that's talking about a Fourth Amendment requirement, items to be seized and the place to be searched. So Bivens does not establish, clearly establish law regarding the issue that's presented here, which is whether a time restriction is a violation of the Fourth Amendment. Indeed, the Fourth Amendment doesn't refer to a time restriction as one of the requirements. That is a restriction that's been established by Rule 41. And in U.S. v. Anderson, the D.C. Circuit case that Judge Udell relied on, the Court talked about how Rule 41 creates technical requirements that go beyond the very limited constitutional requirements. But, I mean, the statute that this warrant was issued was Section, what is it, 879? 879 would have applied to this statute also, correct. And the statute says that, you know, if the magistrate or the judge finds that it's appropriate, it can be done at any time, but here the magistrate didn't find that, right? Well, actually, as interpreted by U.S. v. Rizzi, which is also a Fourth Circuit decision, and Gooding, the United States Supreme Court, 879 says all a magistrate needs to do is find probable cause. Upon a finding of probable cause, the warrant can be issued day or night. That a magistrate doesn't have the authority, actually, under 879, to restrict the time. But our point is you're saying that the magistrate can't limit the warrant to daytime? Under Section 879, if you look at the Gooding decision and the Rizzi decision, we would submit that the magistrate doesn't have authority upon finding probable cause for the search itself, which is not disputed here, the magistrate did not have authority to restrict the search to the daytime. But the Court doesn't even have to go there because under the Rule 41 case law, as the Yanis Marquez case establishes, it was not clearly established law in 2005 that a time restriction was, implicates the Fourth Amendment. And I would also submit that there was a case. Let me ask you, suppose you're right that violation of a time restriction in a warrant is not a violation of the Fourth Amendment. But that only begins the inquiry, doesn't it? Because the next question would be whether the plaintiff in this case can sue for damages for a violation of the terms of a warrant, regardless of whether it's Fourth Amendment or not. I would agree that the plaintiff has not established that he suffered any prejudice by virtue of the search at 4.45 a.m. Do you understand what I'm saying? Put aside the Fourth Amendment. The warrant was executed against his house, and it was executed in violation of the terms of the warrant. So that raises the question whether, forget about the Fourth Amendment, whether he has the right to damages for that violation. And what's your answer to that? I don't – this is not an issue that we've raised. I don't know that they've adequately – that they've identified the nature of the damages in the complaint. But I would also just note that if the court were to look at the case authority from this time period, the 2005 time period, the court will see – and you can look at the U.S. v. Anderson case, which relies on some of the same decisions, the U.S. v. CERC, for instance, and you can look at the Yanis Marquez case, including the 2009 Fourth Circuit decision, U.S. v. Davis, which has a very similar fact pattern, actually. In U.S. v. Davis, the allegation in the motion to suppress was that the search was done at 5 a.m. on a daytime warrant. And the court very clearly said that is a non-constitutional violation. Now, an individual in that context may have the right to move to suppress, and there's a whole body of law during that time period that addresses when suppression is appropriate. Not appropriate – it's not based on this being a Fourth Amendment violation. It's just based on it being a violation of the procedure of Rule 41. It considers such things as whether the officers acted in bad faith, whether there was prejudice in connection with the search. Judge Huvel, this – and I would submit there's not even a consensus among the circuits on that question. And Judge Huvel, relying on U.S. v. Anderson, when presented with that very motion, found this to be a technical violation of the warrant, found the warrant to be valid, did not suppress. So what Mr. Jones is trying to do is relitigate, essentially, an issue that was already resolved in the criminal proceeding. Let me see if I can understand the government's position, though, with respect to the rule and the statute. Are you saying that if Congress passed the statute, enacted the statute, that said that you can execute a warrant on – let's make an absurd example – reasonable suspicion, because Congress passed that statute, as long as the officers complied with that statute, that wouldn't violate the Fourth Amendment? You're not taking that position, right? No, because the Fourth Amendment specifically says, upon probable cause. Okay. So if Congress doesn't explicitly do something in violation of the Fourth Amendment as stated, and just says, well, you can execute a warrant any time, day or night, that settles the matter? Or is it for the courts to determine whether certain nighttime executions of warrants violate the Fourth Amendment? Well, I would submit, Your Honor, that the Supreme Court, in the Gooding case, already has interpreted Section 879, already considered the argument which was made there, which was that 879 required a finding of probable cause for a nighttime search, and already has resolved that question and said, no, Section 879 requires – permits execution of a warrant day or night upon – once the magistrate has found probable cause for the search itself. But that only settles the question of what the statute requires, right? It doesn't settle the matter of what the Fourth Amendment requires. Well, but in Young v. – this Court itself said that the Fourth Amendment does not prescribe nighttime searches. The Fourth Amendment speaks of a requirement of a neutral magistrate, probable cause, and that the items to be seized and the place to be searched be identified. There's only three requirements to the Fourth Amendment. Now, in 2005, it was not clearly established. And so the time restriction that we're talking about here was an additional protection that Congress added in Rule 41. And then Congress, recognizing that drug warrants involve different considerations, established Section 879, which does not have the same time restrictions as Rule 41. But be that as it may, pulling back from the issue a bit, what we're looking at here on qualified immunity is whether it was clearly established law in 2005 that the failure to comply with a time restriction violated the Fourth Amendment and how a reasonable officer could believe it was clearly established law when the Fourth Circuit said there's a circuit split on the issue, when the First Circuit, as late as 2009, said the failure to comply with the time restriction was a nonconstitutional violation, when a district court judge, Judge Rubell, considering this very same issue, denied repeated motions to suppress on the basis that the failure to comply with the time restriction was a technical violation of Rule 41 that did not warrant suppression. But suppose we agree with you on that issue that it's not clearly established. Why shouldn't we decide the constitutional issue and hold that it is a Fourth Amendment violation to execute a daytime warrant at night? Well, in the Pearson case, the court has the option of choosing which of the two prongs to decide first. Ultimately, you would need to reach the clearly established issue to reverse judge, to address Judge Leon's decision. But what we would submit, again, going back to the beginning of my argument, that this is really a Fourth Circuit question because it was a Fourth Circuit warrant and the search of court occurred within the Fourth Circuit. So I don't know that the D.C. Circuit should be opining on a constitutional question that pertained to a search in the Fourth Circuit when the court can decide this issue just based on the clearly established question. There are no further questions on that? I have one. You've twice alluded to Judge Huvel's saying that she wouldn't suppress on this basis. I'm not sure why that or whether you're advancing that as a reason for saying that the, for that reason alone, that the plaintiff would not be entitled to damages. It's a different remedy. It's a different context. I think what I'm citing that for, Your Honor, is that there's been a suggestion that the warrant somehow was invalid per se or that the search was invalid per se because it allegedly occurred outside the time restriction. And my point is that suggestion is with respect both to the Fourth Amendment and to the warrant itself. And so the argument, the question would be then, was it clearly established in 2005 that exceeding the time restriction on a warrant would render the search invalid? That goes to the Fourth Amendment question, right? That goes to the Fourth Amendment. The clearly established standard is relevant to the liability under the Fourth Amendment. Yes. I think Judge Randolph raised this question. What about liability apart from the Fourth Amendment? Well, the only issue here is a Fourth Amendment evidence claim. So to the extent there's no Fourth Amendment evidence claim, there's no liability. And my point on the judge's point is that there's no claim based solely on the facial violation of the warrant. That's my understanding of the claim. Correct. And I would submit that the warrant has already been deemed valid. The search has already been deemed valid by the district court. Well, valid or just not worthy of suppression? Well, if it was per se invalid, then the court would not have found it to be a nonconstitutional violation. Okay. This is all ultimately resolved by a plea. So there's no test of that ruling by the district court. Well, it was never appealed, and you waived the appeal by pleading. So, therefore, it's been adjudicated. What do you do with the Jones case in the Supreme Court and the way that that was handled by the Fourth Circuit in Marquess? The Jones case in the Supreme Court dealt with the GPS search. No, no, no, not that one. It's 357 U.S. 496. Are you familiar with it? If the court could provide a little more information. I'm sorry. The attorney general of the United States conceded, according to the Fourth Circuit, and the Supreme Court agreed that, and I'm reading from the Fourth Circuit, the Marquess case. The Supreme Court accepted the attorney general's concession that the nighttime search under color of a daytime warrant violated the Fourth Amendment. Yes. Thank you, Your Honor. I know what you're referring to. Yes. So that was a 1950-so decision. I believe it predated the Section 879 statute. And I'm not familiar with the state of the law in the 1950s, so I can't further opine on the basis for that assertion, but I do know that the government in this criminal proceeding in this case, underlying this case, asserted that the warrant was valid and that Judge Shovell agreed and that the case law that has been, that existed from the 1980s forward, up until the 2015 Yanis Marquess case, was very clear that Rule 41 has a constitutional aspect to it, the three items identified in the Fourth Amendment, and non-constitutional aspects to it. Even though the attorney general conceded to the Supreme Court otherwise. But that was in the 1950s before, I don't know when Rule 41 was enacted, but I know that 879, I believe, was enacted. But I think Judge Randolph just asked my question much better than I did, which is, what does the statute have to do with whether it's constitutional or not? I mean, Congress can pass whatever it wants. That doesn't make something constitutional that's not. But whether it's clearly established, if the Congress has passed, I mean, again, the law was certainly not clearly established in 2005, that officers would have noticed that failure to comply with the time restriction. Okay, we're beyond that, though. I mean, we were asking you questions, or at least I was asking you questions, about why shouldn't we hold that it violates the Fourth Amendment? If the attorney general conceded it, isn't that a pretty good reason to hold that? Again, I would submit that this court would be opining on law regarding searches that were conducted within the Fourth Circuit. But even if the court were to reach that holding in 2016, it would not establish liability under Bivens for these officers in a search that was conducted in 2005. It seems odd, though, that the attorney general in 1958 concedes that execution of a daytime warrant at night violates the Fourth Amendment. So it was clearly established, at least to the attorney general, and that's a confession of error that was made in the Supreme Court of the United States. So it was clearly established in 1958, but not in 2005. I'm not sure that the concession was as affirmative as you stated. I think they conceded the issue. They did not challenge that issue in the Supreme Court. I don't know that that is a concession beyond that. You may be right. I'm just relying on the Fourth Circuit's description. I submit that the Fourth Circuit went beyond that case and discussed its own case law and case law from other circuits to find the circuit split. So to reconcile all that together, I think it's fair to say that it was not clearly established in 2005. I would say in the Fourth Circuit or in this circuit. Again, and I would cite the U.S. v. Anderson decision, which relied on, among other things, U.S. v. CERP, which is one of the cases the Fourth Circuit relied on in saying and observing a circuit split. I do. Each time this comes up, you slide over to clearly established. And, of course, we can approach either aspect of this first. We could take clearly established or violation at all. And with respect to whether it's a violation of Fourth Amendment at all, I gather all you've said is, well, it's a Fourth Circuit case, so we shouldn't get into that. Well, I think that there's a very reasonable question as to whether it's a Fourth Amendment violation. Now, the Fourth Circuit, as of 2015. I understand that. Okay. Right. All right. So if we take that up first, what is your position? I would assert that there are three requirements in the Fourth Amendment, none of which were violated here. Therefore, the time restriction is not a Fourth Amendment requirement, and particularly in the drug warrant context, which is governed by Section 879. Well, you should have stopped it before particularly. I think we've covered that ground, and the statute can't really alter the scope of the Fourth Amendment. The only reason I raise it, Your Honor, is because I think the genesis of the time restriction comes from Rule 41. That's the genesis of all the argument about the constitutionality of the search, because it's not in the Fourth Amendment itself. So is your answer the same, that there's no Fourth Amendment violation if the warrant's good for 10 days and they wait six months to execute it? That's not the issue for the court, so I'm not prepared to take a position. There was a concession in Jones to the fact that the government did not contest that. It was the 11th day, one day after the expiration of the warrant. The department did not come in here and say 10 means 11, and day means night. I'm not taking a position on that only because that's not an issue I'm prepared to discuss because I was focusing only on the time restriction of the warrant. I'd like to address, if I could, briefly. I know I've exceeded my time, but if I could have four moments. Go ahead.  The inventory is part of the district court proceeding, docket entry number 619-7. And the inventory, the items identified on the inventory are consistent with the attached, the description of the items to be, that may be seized on the attachment to the warrant. Plaintiff or appellant, excuse me, is diminishing. When you said district court, do you mean Judge Leon? Excuse me, I apologize, Your Honor. The criminal proceeding, 619-7 of the criminal proceeding. Now you're back with Judge Revelle? Judge Revelle, presiding over it. So ordinarily the chain of authority runs from the Supreme Court to us, to the district court, not from the district court to us. Understood, Your Honor. I was just making the point that a reasonable officer is not in a position to, I was just making the point. Actually, frankly, in the past when we've dealt with these, insofar as I know, when I've dealt with these questions that have been clearly established, it's a question about the decisions of the circuits if there's no Supreme Court authority. Absolutely. Not about district courts in circuits that haven't answered the question. Understood, Your Honor. And I just say that Judge Revelle did cite a D.C. circuit case for her decision, and I think that is a precedential decision for this court, and also that we do raise the issue about whether an appellant can relitigate an issue that was already adjudicated by the district court and not appealed in the criminal context. But going to the pleading obligation under IGBAL, it is a heightened pleading obligation, and a single assertion that 30 or 40 boxes were taken that were not listed on the attachment to the warrant does not plead a plausible claim under the IGBAL standard. And it is, I would refer this court to its decision in Atherton, which we cite in our papers, where the court discusses IGBAL and finds that a claim by someone who was removed from a grand jury, that they were removed for discriminatory reasons, the court dismissed that as being not a plausible claim. Let's suppose he had pled that the police removed every piece of property from my home. Would you still be making the same argument? I would. If he also pled that the warrant did not authorize the removal of all the property from the home, then he would have come much closer and possibly have pled a plausible claim. The problem is there's nothing in the complaint that pleads what the scope of the warrant was. There's nothing in the complaint that pleads what was taken. And all he has pled is a conclusory assertion that items were seized that were not listed on the attachment to the warrant is actually how it's pled in the complaint. And we would submit that that falls far short of the pleading standard in the IGBAL decision in Twombly. Particularly when Jones has access to the inventory and could have pled, if he believed certain items to be the scope of the warrant, could have pled that with particularity and failed to do so. Very briefly, I discussed the statute of limitations issue. In Earl v. District of Columbia, also cited in our papers, this court, as a 2009 decision, relied on the Wallace v. Cato decision, the language in that decision that said, we look to the law of the state where the cause of action arises for Section 1983 claims, which is an analog to the Bivens claim here. And so we would submit that this circuit itself has recognized that as the appropriate form. And to answer the suggestion, why was the statute of limitations not raised as to the other claims, it's a much more, it's a more, the simple answer to that is that the not-going-to-announce claim was not raised in the 2007 cases. Plaintiff, at page 15, note 6 of their reply, acknowledges that as to the not-going-to-announce claim, they're not contending that there was any tolling by virtue of the HECC bar that applied to the 2007 cases. So this is a new claim raised for the first time in 2012 that accrued in 2005. On its face, time barred. The Tinker decision- Unless the D.C. statute of limitations applies? Well, we would submit, Your Honor, that the language in the D.C. tolling statute talks about imprisonment. And the Tinker case, at most, extended the concept of imprisonment to an arrest. So in other words, if there's excessive force as part of your arrest, you may be able to, under the Tinker case, have the benefit of tolling. But the entry preceded the arrest. And whether it preceded it by a minute or 10 minutes or 50 minutes, the D.C. statute does not, we submit, establishes a bright-line rule. Otherwise, the courts would be in a position of having to make a determination as to how far in advance- That's the point of statute of limitations. Yes. They devise a bright-line rule. Exactly. If you're one day late or five minutes late, that's too bad. And it's very clear that the time of entry claim preceded the arrest, as the plaintiff himself alleged. So we would submit under either- Well, that's always going to be true, isn't it?  Yes. Although, in this case, it might have been actually coincident, because as I understand it, when the door was opened, the officer saw the defendant at the top of the stairs. And he was obviously not free to leave. Well, he was actually, he pleads that he was in his bedroom at the time of the entry. So according to- I guess I do remember this. So I've seen both accounts. I don't know which- So you're saying that- I'm just saying that the tolling begins when, in the time of arrest? I would submit that under the statute upon imprisonment, but that the Tinker case from the D.C. Court of Appeals arguably extends the term imprisonment to the point of arrest, to the moment of arrest, but not before. And I think what Appellant is trying to do is extend the Tinker decision to conduct that clearly preceded any arrest. By how much? Well, they're saying by a minute or two, and what I submit is it's a bright-line rule, so whether it's a minute or a day, it does not matter. So is there anything- I guess there's nothing, by your account, there's nothing he could ever have done to file a timely complaint based on a violation of the Anachan Announce- No, no, he could have included an Anachan Announce claim in his 2007 lawsuit. Okay, okay. He didn't do so, so he has no basis to- It's an odd statute to even suppose that it's a disability because someone's incarcerated, and Webster Bivens filed his complaint while he was sitting in the Atlanta penitentiary, and I noticed that Mr. Jones has filed a number of complaints, although he's been in prison for, what, 12 years or so? Yes, and the one last point I'd like to make on that, and then I'll rest, is that in Jones' motion to dismiss opposition, at page 8, they allege that none of the claims are time-barred, and at page 19, footnote 3, they also make various arguments about the statute of limitations. So the statute of limitations was clearly placed at issue by our motion to dismiss, and clearly, Jones was on notice of that and addressed the statute of limitations issues in their own motion to dismiss opposition. If there are no further questions, we ask- You're not saying that, are you raising the, well, you still have an opportunity, if the case gets remanded, to raise statute of limitations in your answer, correct? Yes. Yeah. Are you, your last remarks confused me a little bit. Are you saying you're going to raise statute of limitations with respect to all three of the- No, no, I'm sorry. I was just responding to the suggestion that the statute of limitations issue was raised for the first time in the motion. Oh, okay. And what I'm saying is that it was addressed broadly in our opening motion, and I think the plaintiffs understood that and addressed, had a broad-based discussion of the statute of limitations issue in their opposition. Okay. If there are no further questions, we ask that the judgment of the district court be affirmed. Thank you. Thank you. All right, Mr. Shelley, we'll give you three minutes for rebuttal. Thank you, Your Honor. To go to the Jones v. United States case that Judge Randolph mentioned, in fact, in the decision itself, Justice Harlan notes this, that it is difficult to imagine a more severe invasion of privacy than the nighttime intrusion into a private home that occurred in this instance. And with that, as the Yanis Marquez court noted, begins the idea, at least, or is noted in the Supreme Court, the idea that nighttime searches can be unreasonable under the Fourth Amendment, even if the word nighttime doesn't actually appear in the text of the Fourth Amendment. I also want to address a couple of the cases that- Correct. Whether there was probable cause, for instance, in this instance. Why shouldn't we follow that analysis here? In other words, follow the Jones case and say, okay, this was a search without a warrant. Well, I would say it is true. It is true. It's without a warrant because it was at night when the warrant said day. It's, again, the Bivens idea, the Marrow idea. My opponent mentioned the Rizzi case of the Fourth Circuit, Gooding, this U.S. Supreme Court case, Davis from the Fourth Circuit. They all involve situations where the warrant was silent. It didn't say, in other words, it said day or night. And to use that then as case law, saying that a nighttime search with a daytime warrant is potentially lawful, it doesn't follow from that. And, in fact, in the Yanez Marquez case, the court said it's not a novel proposition that this is a problem, and it's a simple rule that should be applied from those cases. And then I want to just mention for a second the Anderson case, which is from this circuit. It's really not on point. It's not on point at all because that was one where a nighttime search was authorized, and it occurred at night. And the only issue was did the judge there wrongly interpret Rule 41 to allow a nighttime search? It didn't involve, again, a breach of the actual warrant. And the last point I'd like to just mention is, again, on the imprisonment idea under the tolling statute for D.C. And at page 28 of the government's brief, note 10, they note the Tinker case, which we talked about a little bit, and this is how they summarize it. Holding that a claim of excessive force during arrest was tolled because the claim accrued during the arrest itself and indicating that the required incarceration under the tolling statute began at the time of the arrest. And if you go read the decision again, the excessive force occurred before he was arrested. And nonetheless, because it was all a contemporaneous event, the fact that it happened momentarily before the actual arrest didn't move the D.C. Court of Appeals, which should govern, really, the interpretation of the tolling statute here. Counsel, I'm not sure whether you covered this earlier or not. I think we established that the police left an inventory. Yes. You have the inventory. Yes. And it's in the Judge Hubel's record. Okay. And so is it your position that the inventory will show that things outside the scope of the warrant were taken? Mr. Joseph's point would be that the inventory shows what was taken. Some of it's very general, says miscellaneous, but his point would be none of it is he knows that in his house there was no, in his view, there was no indicia of drug dealing. Nonetheless, 40 boxes of material were taken when the search warrant attachment listing what could be taken all indicated take these documents or these monies associated with drug trafficking. And so his point is if you compare the two, you might see something that says financial record and financial record, but not of drug trafficking. So, okay, so if you put the warrant and the receipt return next to each other, he would be able to say there's a particular item that was seized that is not within the description of the warrant. He would say yes, but he would say all of the items seized were not within the warrant, even as described, because the way he If the court said okay, well, choose five, let's see them. Excuse me, Your Honor? If the court said good, choose five, let's see, let's do a comparison. He would do that. He would do that, although he's never seen the boxes. He's never seen the boxes, but he's got the receipt. He has the receipt, yes. So this claim is not really one, the way it was pled was not one of box 17 is a problem, box 24 is a problem. This is one of all boxes are a problem because they don't indicate drug trafficking and all my personal effects were nonetheless taken. So he's pled to drug trafficking, right? Excuse me, Your Honor? He has pled to drug trafficking. He has for a variety of reasons. So he's in a position to say I kept all of my drug paraphernalia and records of account and proceeds and everything else somewhere else. Well, he pled guilty based on the finding of narcotics at a different location, just narcotics at a different location, and after two hung juries and a reversal by the Supreme Court and frankly wanting to get on with his life at this point and a reduced sentence as a result. He'd served, what, eight out of the 15 years by that point. Exactly. He's almost done at this point. We'd ask that the court reverse again all three, the holdings on all three aspects of count five of the amended complaint. Thank you. We'll take the matter under advisement and we'll take a brief recess.
judges: Wilkins, Ginsburg, Randolph